THE TRAVELERS INSURANCE COMPANY, A CORPORATION,
APPELLEE, V. JOSEPH S. NELSON AND D. MARGARET NELSON,
HUSBAND AND WIFE, APPELLANTS.

546 N.W.2d 333

Filed April 23, 1996.   Nos. A-94-730, A-94-980.

Lawrence H. Crosby, of Crosby & Associates, and Joseph S. Nelson and D. Margaret Nelson for appellants.

Timothy V. Haight and Kelly R. Dahl, of Baird, Holm, McEachen, Pedersen, Hamann & Strasheim, for appellee.

HANNON, SIEVERS, and INBODY, Judges.

SIEVERS, Judge.

The foreclosure proceedings by The Travelers Insurance Company upon the ranch of Joseph S. Nelson and D. Margaret Nelson have spawned numerous appeals in this court. The legal proceedings began on August 3, 1992, when Travelers filed a petition in foreclosure and application for receiver against the Nelsons, alleging a past-due principal sum of $569,186.33 together with substantial accrued interest. The Nelsons' debt was secured by a deed of trust covering over 8,800 acres of ranchland in Morrill and Garden Counties. A receiver was appointed, and the Nelsons appealed to this court in case No. A-93-346, alleging that the receiver should not have been appointed. On that issue, we affirmed the district court's judgment by a memorandum opinion and judgment on appeal dated December 6, 1994, holding:

> Given the extensive discretion granted to the trial court in the appointment of receivers and considering the uncertainty of the value of the land unless actually sold, we cannot conclude that the district court erred when it found that a comparison of debt against value justified the appointment of a receiver.

In the earlier appeal, the Nelsons assigned as error the broad issue: "Whether or not Joseph S. Nelson and D. Margaret Nelson have been denied due process of law." We gave their brief an expansive reading and addressed what we perceived to be their primary complaint relating to due process, i.e., that "the district court of Garden County continued to exercise jurisdiction over the land and them, by holding further court proceedings and ultimately jailing Mr. Nelson for contempt because of their failure to comply with the court's order when they had appealed this case to the Court of Appeals." We relied upon *Production Credit Assn. of the Midlands v. Schmer*, 233 Neb. 785, 448 N.W.2d 141 (1989), and held that the district court's order appointing the receiver was not superseded and thus was capable of enforcement by the district court during the pendency of the appeal to the Court of Appeals. As a result, we found no denial of due process.

The instant appeals also come from the district court for Garden County, case No. 2762, the same case with which we

dealt in our opinion of December 6, 1994. In the first of the two appeals now before us, case No. A-94-730, the Nelsons appeal the district court's decree of foreclosure entered July 1, 1994, which found the principal sum due Travelers to be in the amount of $834,155.03 as of May 10, 1994, together with interest accruing at $230 per day. The court ordered that the Nelson ranch property, which was legally described in full in the decree of foreclosure, be sold as a single unit. The decree of foreclosure is appealed in case No. A-94-730.

In case No. A-94-980, the Nelsons appeal the district court's order of October 3, 1994, confirming the sale of the involved real estate to Travelers for the amount of $761,136.20. The court made specific findings that the sale was in conformity with the law of the State of Nebraska, that the property was sold for fair value under the circumstances and conditions of the sale, that a subsequent sale would not realize a greater amount, and that the sale should in all respects be confirmed. We have combined these two appeals for briefing, argument, and decision.

## ASSIGNMENTS OF ERROR

The Nelsons assert three assignments of error: (1) The trial court erred in ordering the sale of the property without requiring Travelers to allow the Nelsons to designate, or reserve the right to designate, a homestead before the property was sold by decree of foreclosure; (2) the trial court erred in confirming the foreclosure sale when Travelers had not provided the Nelsons "homestead exemption procedures at least ten days before judicial confirmation of the sale"; and (3) the trial court erred in continuing to assert jurisdiction by proceeding with the foreclosure after the Nelsons had appealed to the Court of Appeals.

## ANALYSIS

*Order of Foreclosure Sale Without Designation of Homestead Rights.*

Neb. Rev. Stat. § 40-103 (Reissue 1993) precludes a debtor's homestead exemption when the underlying debt is secured "by mortgages upon the premises executed and acknowledged by both husband and wife." The Nelsons argue that because

Travelers was foreclosing on a trust deed rather than a mortgage, § 40–103 does not apply here, and, consequently, they are entitled to a homestead exemption. Other than federal cases dealing with the federal Agricultural Credit Act, which are not pertinent, the Nelsons do not cite authority for their proposition that the § 40–103 preclusion of the homestead exemption for mortgages does not apply in the instances of trust deeds.

The statute, § 40–103, provides:

The homestead is subject to execution or forced sale in satisfaction of judgments obtained (1) on debts secured by mechanics', laborers', or vendors' liens upon the premises; and (2) on debts secured by mortgages upon the premises executed and acknowledged by both husband and wife, or an unmarried claimant.

The Nelsons argue that they repeatedly attempted to have their homestead set aside to them and that because Travelers did not give them prior notice of their homestead rights and the opportunity to designate their homestead prior to foreclosure, the decree of foreclosure must be set aside under Neb. Rev. Stat. § 25–1531 (Reissue 1995). This statute provides:

If the court, upon the return of any writ of execution, or order of sale for the satisfaction of which any lands and tenements have been sold, shall, after having carefully examined the proceedings of the officer, be satisfied that the sale has in all respects been made in conformity to the provisions of this chapter and that the said property was sold for fair value, under the circumstances and conditions of the sale, or, that a subsequent sale would not realize a greater amount, the court shall direct the clerk to make an entry on the journal that the court is satisfied of the legality of such sale, and an order that the officer make the purchaser a deed of such lands and tenements. Prior to the confirmation of sale pursuant to this section, the party seeking confirmation of sale shall, except in the circumstances described in section 40–103, provide notice to the debtor informing him or her of the homestead exemption procedure available pursuant to Chapter 40, article 1. The notice shall be given by certified mailing at

least ten days prior to any hearing on confirmation of sale. The officer on making such sale may retain the purchase money in his or her hands until the court shall have examined his or her proceedings as aforesaid, when he or she shall pay the same to the person entitled thereto, agreeable to the order of the court. If such sale pertains to mortgaged premises being sold under foreclosure proceedings and the amount of such sale is less than the amount of the decree rendered in such proceedings, the court may refuse to confirm such sale, if, in its opinion, such mortgaged premises have a fair and reasonable value equal to or greater than the amount of the decree. The court shall in any case condition the confirmation of such sale upon such terms or under such conditions as may be just and equitable. The judge of any district court may confirm any sale at any time after such officer has made his or her return, on motion and ten days' notice to the adverse party or his or her attorney of record, if made in vacation and such notice shall include information on the homestead exemption procedure available pursuant to Chapter 40, article 1. When any sale is confirmed in vacation the judge confirming the same shall cause his or her order to be entered on the journal by the clerk. *Upon application to the court by the judgment debtor within sixty days of the confirmation of any sale confirmed pursuant to this section, such sale shall be set aside if the court finds that the party seeking confirmation of sale failed to provide notice to the judgment debtor regarding homestead exemption procedures at least ten days prior to the confirmation of sale as required by this section.*
(Emphasis supplied.)

It is the emphasized portion of § 25-1531 which forms the basis of the Nelsons' argument that they are entitled to have the sale set aside, because they claim that Travelers did not provide them notice regarding homestead exemption procedures 10 days prior to the confirmation of the sale.

It is clear that the notice requirements, the failure of which can potentially lead to the setting aside of a sale, are not applicable when the circumstances are as described in § 40-103,

i.e., debt secured by a mortgage upon the premises executed and acknowledged by both husband and wife. The trust deeds at issue here were executed by both of the Nelsons, and there is no claim to the contrary. It has been said that the exemption provided for in § 40-103, which subjects a homestead to execution or forced sale, merely recognizes that some debtors may wish to waive their homestead exemption when mortgaging land in order to increase their borrowing power. *Federal Land Bank of Omaha v. Blankemeyer*, 228 Neb. 249, 422 N.W.2d 81 (1988).

When §§ 40-103 and 25-1531 are considered together, it becomes clear that the question which must be answered in this appeal is whether a trust deed, such as is involved in this case, is to be treated in the same way as a mortgage. If a trust deed is treated as a mortgage, then under § 40-103 there is an exclusion, as the homestead may be pledged, and the notice of homestead rights and corresponding sale set-aside provisions of § 25-1531, when notice is not given, do not apply.

In answering the question of whether a trust deed is treated like a mortgage, we first quote Neb. Rev. Stat. § 76-251 (Reissue 1990), which provides:

> Every deed conveying real estate, which, by any other instrument in writing, shall appear to have been intended only as a security in the nature of a mortgage, though it be an absolute conveyance in terms, shall be considered as a mortgage. The person for whose benefit such deed shall be made shall not derive any advantage from the recording thereof, unless every writing operating as a defeasance, or explaining its effect as a mortgage, or conditional deed, is also recorded therewith and at the same time.

On its face, a trust deed is a conveyance absolute in form, but which is intended *only* as security for a debt, as in the nature of a mortgage. In construing this statute, the Nebraska Supreme Court has held that when an instrument executed by the parties is intended as security for a debt, it is in equity a mortgage, whatever its form or name may be. *Campbell v. Ohio National Life Ins. Co.*, 161 Neb. 653, 74 N.W.2d 546 (1956). We quote from *Campbell*:

It is also generally accepted that if an instrument executed by parties is intended by them as security for a debt, whatever may be its form or name, it is in equity a mortgage. This doctrine proceeds from the broad equitable principle that equity regards substance and not form. It may be said as a general rule that if an instrument transferring an estate is originally intended between the parties as security for money or for any other encumbrance, whether the intention is exhibited by the same instrument or by any other, it is considered in equity as a mortgage. Northwestern State Bank v. Hanks, *supra;* Annotations, 79 A. L. R. 937, 155 A. L. R. 1104. This jurisdiction adheres to the doctrine alluded to in the foregoing discussion and it has been made the policy of the state by legislative declaration. Section 76-251, R. R. S. 1943, provides: "Every deed conveying real estate, which, by any other instrument in writing, shall appear to have been intended only as a security in the nature of a mortgage, though it be an absolute conveyance in terms, shall be considered as a mortgage. * * *" This court has frequently and consistently accepted and applied this doctrine in the decision of cases appropriate for its application. It said in Doran v. Farmers State Bank, 120 Neb. 655, 234 N. W. 633, that: "A deed, absolute on its face, but which, in fact, was given as security for certain obligations, and by which grantors were to receive any sum over and above such obligations for which the land conveyed should be sold, is, in nature and effect, a mortgage."

161 Neb. at 659, 74 N.W.2d at 552.

There can be no question that the trust deeds involved in this matter were intended as security for the loans made to the Nelsons by Travelers and that the ranch being foreclosed upon in this action was used as security for that debt.

In *Blair Co. v. American Savings Co.*, 184 Neb. 557, 169 N.W.2d 292 (1969), the Supreme Court dealt with a declaratory judgment action to determine the constitutional validity of the Nebraska Trust Deeds Act, Neb. Rev. Stat. §§ 76-1001 to 76-1018 (Reissue 1990 & Cum. Supp. 1992). The argument

advanced by the petitioner before the Supreme Court was that the act was amendatory and did not contain all sections amended: specifically the act did not include § 76-251. The Supreme Court held that that act was constitutional as an independent act, not amendatory in nature, and therefore was not in violation of the Nebraska constitutional provision which requires that amendatory acts shall contain all the sections amended. In answering the petitioner's argument, the court stated:

> The Nebraska Trust Deeds Act authorizes the use of a security device which was not available prior to its enactment. The act permits the use of an instrument which may be foreclosed by sale without the necessity of judicial proceedings. It authorizes and permits a method of financing which was not formerly available, *since trust deeds have been considered to be subject to the same rules and restrictions as mortgages.* See Comstock v. Michael, 17 Neb. 288, 22 N. W. 549. The act is complete in that it prescribes in detail the procedures to be followed in the execution and enforcement of trust deeds. It does not cover the entire subject of secured real estate transactions but it does cover the subject of trust deeds. We conclude that the act is an independent act, not amendatory in nature, and not in violation of Article III, section 14, Constitution of Nebraska. To the extent that section 76-251, R. R. S. 1943, may be in conflict with the Nebraska Trust Deeds Act, it is modified by implication. Chicago & N. W. Ry. Co. v. County Board of Dodge County, 148 Neb. 648, 28 N. W. 2d 396.

(Emphasis supplied.) *Blair Co. v. American Savings Co.*, 184 Neb. at 558-59, 169 N.W.2d at 294.

▮ The conflict alluded to in *Blair Co.* is that the Nebraska Trust Deeds Act allowed for sale of the trust property by the trustee without judicial proceedings, although at the option of the beneficiary, "a trust deed may be foreclosed in the manner provided by law for the foreclosure of mortgages on real property," as long as the power of sale is expressly provided for in the trust deed. § 76-1005. Thus, the Nebraska Trust Deeds Act's amendment by implication of § 76-251 is that every deed,

including trust deeds, which is intended as security, even though the deed provides for an "absolute conveyance," is considered a mortgage *except* when, under a trust deed and as allowed under § 76-1006, the trustee exercises the power of sale without judicial proceedings, as opposed to the beneficiary's using the judicial procedure for foreclosure of mortgages. In those instances when the beneficiary chooses to foreclose a trust deed as a mortgage, it is then treated as a mortgage, and under § 40-103, the exclusion from the requirements of the notice and set-aside provisions of § 25-1531 is operable.

From the foregoing, we believe the conclusion is inescapable that a trust deed can be the functional equivalent of a mortgage, depending upon the remedy selected by the beneficiary, the options being a nonjudicial trustee sale or judicial foreclosure under § 76-1005. In the instant case, the trust deed was foreclosed as in the case of a mortgage, and as a consequence, the exclusion provided for in § 40-103 applies to the trust deeds executed by the Nelsons. Thus, their argument that the decree of foreclosure and the order confirming sale must be set aside because they did not receive the notice of homestead rights provided for in § 25-1531 must, of necessity, fail.

*Farm Homestead Protection Act.*

In support of the Nelsons' contention that they were not provided with appropriate notice of homestead exemption procedures prior to the sale, which now allegedly gives them the right to set aside the sale, they cite us to the Farm Homestead Protection Act, Neb. Rev. Stat. §§ 76-1901 to 76-1916 (Reissue 1990). Their argument is that

> Nelsons repeatedly asked for their homestead rights under Nebraska law. These rights were not allotted to them by the trial court at any point. Nelsons received no opportunity to designate their homestead prior to the foreclosure by The Travelers. . . .
>
> The insurance company-Lender resisted Nelsons' rights at every point. The foreclosure should be voided for failure to allow Nelsons designation of a homestead.

Brief for appellants at 19-20.

This is the sum and substance of this argument. Frankly, the Nelsons' brief is of little assistance, since it ignores much of the statutory law on the subject and quickly moves past the fact that the record before this court fails to demonstrate that the Nelsons fulfilled the statutory prerequisites for relief under the Farm Homestead Protection Act. Nonetheless, we briefly address their argument.

The Farm Homestead Protection Act provides that in the body of a mortgage or trust deed instrument executed on or after November 21, 1986, upon agricultural land, the mortgagor or trustor may make a designation of homestead. However, even if such designation is not made, the act provides that the mortgagor or trustor shall be deemed to have reserved the right to defer his or her designation of homestead until such time as a decree of foreclosure is entered upon such mortgage or trust deed. § 76–1904. The act provides at § 76–1904(3)(a) that the mortgagor or trustor may disclaim in writing the right to make a designation of homestead, but stringent requirements are imposed on the mortgagee or trustee who seeks to rely on any written disclaimer. Section 76–1904(3)(b) also provides for a waiver of the right to make designation, but again stringent notice and filing requirements imposed upon the mortgagee or trustee are set forth in the statute.

This case involves foreclosure of a trust deed of July 15, 1984, clearly prior to the effective date of the Farm Homestead Protection Act. However, it also involves the foreclosure of the trust deed executed November 17, 1989, well after the effective date of the act. Travelers does not cite us to any such disclaimer or waiver by the Nelsons which Travelers procured at the time of the 1989 trust deed. In addition, we have been unable to uncover in the record in the cases before us, or in the voluminous record in the previous case decided by our opinion of December 6, 1994, any disclaimer or waiver of the right to designate homestead by the Nelsons. Despite the lack of waiver or disclaimer by the Nelsons, the claim to relief under the Farm Homestead Protection Act is resolved by the apparent failure of the Nelsons to follow the procedures set forth in § 76–1906 et seq. for the "redemption of [their] redemptive homestead." Section 76–1906 requires the Nelsons, as trustors, to file a

petition, signed and sworn to, in the foreclosure action not later than 20 days after rendition of the decree of foreclosure in order to claim the redemptive homestead. According to § 76-1907, that petition must set forth the designation of the homestead and include a written appraisal prepared by a licensed and certified real estate appraiser setting forth the appraiser's estimate and the basis for the current fair market value of the entire real estate, the redemptive homestead if sold separately from the balance of the protected real estate, and the balance of the protected real estate if sold separately from the redemptive homestead. Section 76-1908 then provides for trial court procedures for such redemption. However, the obvious trigger under the Farm Homestead Protection Act is the filing by the trustor or the mortgagor of the petition requesting redemption of the redemptive homestead. In the case at hand, although alluding to the act in their brief, the Nelsons once again do not cite us to any pleading in the record showing compliance with the very specific requirements of §§ 76-1906 and 76-1907. We have been unable to uncover any such petition in our examination of the record before us. The decree of foreclosure was filed July 1, 1994, and therefore under the act, the Nelsons' petition must have been filed within 20 days after that date. Absent the petition for redemption of redemptive homestead required by § 76-1906, no relief is available to the Nelsons under the Farm Homestead Protection Act.

*Effect Upon District Court's Jurisdiction of Appeal to Court of Appeals.*

The Nelsons argue that the district court for Garden County was without jurisdiction to take further action, including ordering a sale and confirming the sale, once their appeal of the appointment of the receiver was pending in this court in case No. A-93-346. At the outset, certain uncontroverted matters should be set forth. The record in the earlier appeal, as well as these appeals, fails to establish the posting of any supersedeas bond. We operate on the basis that the Nelsons have never superseded any of the orders of the district court for Garden County. Both of the orders of the district court for Garden County under attack here were in fact entered while the earlier

appeal, case No. A-93-346, was pending in this court. The Nelsons support their claim that the pendency of the earlier appeal prevented the entry of the two orders under attack here by citations to *Carlson v. Bartels*, 143 Neb. 680, 10 N.W.2d 671 (1943), and *State v. Allen*, 195 Neb. 560, 239 N.W.2d 272 (1976).

Admittedly, *State v. Allen, supra*, holds that an order made by the district court after the vesting of jurisdiction in an appellate court is void and of no effect. However, *State v. Allen* is a criminal case and involved the trial court's ruling on a motion to withdraw the plea of guilty after an appeal had been perfected to the Supreme Court. We do not consider *Allen* as authoritative in the instant case.

In *Carlson v. Bartels, supra*, the plaintiffs sought a decree that they were children of the decedent entitled to an award for support, education, and maintenance against the decedent's estate. This request was in the context of a declaratory judgment action, but the Supreme Court observed that the estate was being administered in the county court for Wayne County, which had original jurisdiction in all matters of probate, and that such court in the proper exercise of its original jurisdiction may be called upon to determine the question of whether the plaintiffs were children of the decedent. Accordingly, the Supreme Court held that the county court, in such an event, "should not be confronted with a decision of this court, determining that question." *Carlson v. Bartels*, 143 Neb. at 687, 10 N.W.2d at 675. *Carlson* certainly does not represent authority for the blanket proposition which the Nelsons advance.

The Nelsons also cite *Ventura v. State*, 246 Neb. 116, 517 N.W.2d 368 (1994), which admittedly states the broad proposition that a lower court is without jurisdiction to hear a case involving the same matter which has been appealed to an appellate court. That ruling was in the context of a motion for new trial made to the Nebraska Equal Opportunity Commission, whose decision was already on appeal to the Supreme Court after it had been affirmed by the district court.

It appears that the Nelsons fail to apprehend the difference between a court taking further action with respect to a final judgment already on appeal and a court enforcing its

judgment during an appeal when such judgment has not been superseded. The law is established that if a judgment is not superseded, it is effective notwithstanding appeal. *Lincoln Lumber Co. v. Elston*, 1 Neb. App. 741, 511 N.W.2d 162 (1993). In the absence of a supersedeas bond, the judgment retains its vitality and is capable of being executed upon during pendency of appeal. *Production Credit Assn. of the Midlands v. Schmer*, 233 Neb. 785, 448 N.W.2d 141 (1989). Consequently, as we earlier ruled in the first appeal, because there was no supersedeas bond, the district court could properly enforce its order appointing a receiver, including by use of its contempt powers. Since the appointment of the receiver was but a preliminary step on the road to foreclosure of a past–due mortgage, when there is no supersedeas bond filed, the district court is free to proceed with the determination of whether the property should be sold, and if sold, whether such sale should be confirmed. Thus, there was no error in entering the order directing the sale or in the confirming the sale while the order appointing a receiver, which was not superseded, was being appealed to this court.

## CONCLUSION

Having carefully considered the assignments of error raised by the Nelsons, we find no merit to any of them. Therefore, we affirm the decree of foreclosure and the order confirming sale entered by the district court.

AFFIRMED.